IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

TARGET CORPORATION,

Plaintiff,

v.

HERITAGE REALTY LLC, HERITAGE CH LLC, HERITAGE NASSIM LLC,

Defendant(s).

Case No. 6:26-cv-01191-AP

**FINDINGS & RECOMMENDATION**

POTTER, United States Magistrate Judge:

On June 12, 2026, Plaintiff Target Corporation brought claims for breach of contract and unjust enrichment against Defendants Heritage Realty, Heritage CH, and Heritage Nassim. Compl., ECF No. 1. The Clerk of Court entered an order of default as to all Defendants on July 17, 2026. Clerk's Entry Default, ECF No. 17. Plaintiff now moves for default judgment pursuant to Federal Rule of Civil Procedure 55(b). Mot. Default J., ECF No. 16. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Because Defendants consistently failed to appear, Plaintiff's Motion for Default Judgment should be GRANTED.

## BACKGROUND

In 1989, Plaintiff and Defendants, along with J.C. Penny Company, Inc., entered into a Construction, Operation, and Reciprocal Easement Agreement with respect to real property located in Albany, Oregon (Shopping Center). Compl. ¶¶ 2, 6. Defendants have been the Operator of the Shopping Center since 2018. Compl. ¶ 11. Under Section X-B of the Agreement, the Operator shall operate and maintain the Common Area of the Shopping Center, "in good

order, condition[,] and repair." Compl. ¶ 7. In accordance with Section X-F of the Agreement, Plaintiff shall pay its Allocable Share of the Common Area Maintenance Cost incurred by the Operator. Compl. ¶ 8. The Agreement stipulates in Section X-F that if Plaintiff paid more than its Allocable Share of the Common Area Maintenance Cost, the Operator shall "promptly" refund the excess amount of its Allocable Share. Compl. ¶ 10.

From 2018 to 2020, the Operator failed to deliver a complete and itemized statement of the Common Area Maintenance Cost within 90 days of the Accounting Period as required under Section X-F. Compl. ¶ 12. Plaintiffs sent a Notice of Default pursuant to this failure on June 14, 2021, and thereafter received the requested information from the Operator. Compl. ¶¶ 13-14. Plaintiff determined it had paid more than its Allocable Share of the Common Area Maintenance Cost. Compl. ¶ 14. The overpayment has not been credited back to Plaintiffs. Compl. ¶¶ 14. Again in 2023 and 2024, the Operator failed to deliver a complete and itemized statement of the Common Area Maintenance Cost. Compl. ¶ 15. Plaintiff again addressed this failure with a Notice of Default. Compl. ¶ 16.

Pursuant to Section X-H of the Agreement, Plaintiff completed an audit of each Accounting Period for which it did not receive a statement. Compl. ¶ 17. Plaintiff's audit revealed the Operator's overstatement error when determining Plaintiff's Allocable Share of the Common Area Maintenance Cost was greater than 2%. Compl. ¶ 17. Under Section X-H of the Agreement, the audit cost must be reimbursed to Plaintiff separately from the Common Area Maintenance Cost. Compl. ¶ 17.

Plaintiff alleges that due to the Operator's breach of its obligations under the Agreement, the Operator is in default of the Agreement pursuant to Section XXX-K. Compl. ¶¶ 18-19. Plaintiff filed this action alleging claims for breach of contract and unjust enrichment on June 12,

2026, and filed proof of service that showed Defendants had been served on June 24, 2026. *See* ECF Nos. 1, 11, 12, 13.

After Defendants failed to appear, Plaintiff filed a motion for entry of default on July 17, 2026, supported by a declaration from attorney Nicholas Beyer. Mot. Entry Default, ECF No. 15; Beyer Decl., ECF No. 16. The Clerk of Court entered default against Defendants pursuant to Federal Rule of Civil Procedure 55(a). Clerk's Entry Default; *see also* Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). Plaintiff subsequently moved for default judgment against Defendants on September 3, 2026, again supported by a declaration from attorney Beyer. Mot. Default J..

**STANDARDS**

Obtaining a default judgment is a two-step process. Fed. R. Civ. P. 55. Under Federal Rule of Civil Procedure 55(a), the Clerk of the Court is required to enter an order of default if a party against whom relief is sought fails to plead or otherwise defend an action. Fed. R. Civ. P. 55(a).

After the order of default is entered, the Plaintiff must move for a default judgment. Fed. R. Civ. P. 55(b). A district court has discretion in deciding whether to enter a default judgment. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In considering a motion for default judgment, the court accepts "the well-pleaded factual allegations in the complaint as true." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). However, the court "does not accept as admitted facts that are not well-pleaded, conclusions of law, or facts relating to the amount of damages." *United States v. RiverCliff Farm, Inc.*, No. 3:16-cv-1248-SI, 2017 WL 3388172, *1 (D. Or. Aug. 7, 2017) (citations omitted); *see also Derek Andrew, Inc. v. Poof*

*Apparel Corp.*, 528 F.3d 696, 702 ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true") (citation and internal quotations omitted).

In exercising this discretion, the court may consider a number of factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Additionally, when a party seeks entry of default judgment, courts have a duty to examine their own jurisdiction—both subject matter and personal. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties" before entering a default judgment).

## DISCUSSION

### I. Subject Matter Jurisdiction

Pursuant to § 1332, the Court has diversity jurisdiction over Plaintiff's breach of contract and unjust enrichment claims. To establish diversity jurisdiction, the parties must be citizens of different states and the amount in controversy must exceed $75,000.00. 28 U.S.C. § 1332(a)(1) (conferring jurisdiction on district courts where the plaintiff alleges that the parties are diverse citizens and the amount in controversy exceeds $75,000). As a corporation, Plaintiff is deemed to be a citizen of both the state of its incorporation and the state where it has its principal place of business. *See* 28 U.S.C. § 1332(c); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010)

(defining a corporation's principal place of business as the "place where a corporation's officers direct, control, and coordinate the corporation's activities").

Plaintiff is incorporated in and has its principal place of business in Minnesota. Plaintiff is therefore a citizen of Minnesota. Defendants are limited liability corporations owned by Namco Realty LCC whose principal place of business is in New York and whose sole member is a resident of New York. *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894 (9th Cir. 2006) (adopting the well-established holding that an LLC is a citizen of all the states of which its members are citizens). Because Plaintiff is a citizen of Minnesota and Defendants are citizens of New York, there is diversity in citizenship between the parties.

The amount in controversy in this case exceeds $75,000.00. Plaintiffs request damages in the amount of $158,423.80 which meets and exceeds the threshold needed to satisfy the diversity jurisdiction requirements of § 1332.

**II. Personal Jurisdiction**

The Court also has personal jurisdiction over Defendants. Unless a federal statute governs personal jurisdiction, a district court applies the personal jurisdiction law of the forum state. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Oregon's long-arm statute, Oregon Rule of Civil Procedure 4L, permits a court to "exercise jurisdiction over any party so long as prosecution of the action against a defendant…is not inconsistent with the Constitution of [Oregon] or the Constitution of the United States." Or. R. Civ. P. 4L; *see also Dual Lock Partition Sys., Inc. v. Ridgeview Glass, Inc.*, 877 F. Supp. 1432 (D. Or. 1995).

Federal due process requires that a nonresident defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316

(1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Depending on the defendant's conduct, personal jurisdiction may be exercised as general or specific jurisdiction. In making a personal jurisdiction determination, the court may consider evidence presented in affidavits and comparable allegations that sufficiently support the exercise of personal jurisdiction over the defendants. *See Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001); *see also Hernandez v. Martinez*, No. 12-CV-06133-LHK, 2014 WL 3962647, at *3–5 (N.D. Cal. Aug. 13, 2014) (finding appropriate the exercise of personal jurisdiction where the plaintiffs alleged that defendants were engaged in business in the forum state and defendants contacts satisfied the due process standard for exercising personal jurisdiction).

General jurisdiction allows a corporation to be sued in the state regardless of whether the suit is related to actions it took in the state; it treats the corporation as essentially at home in the state.[1] *See Daimler AG v. Bauman,* 571 U.S. 117, 137-39 (2014). Typically, a corporation is only at home in the place of incorporation and the principal place of business. *Id.* Specific jurisdiction, on the other hand, provides for jurisdiction when the suit is related to the corporation's activities in the state. *Id.* at 126–27.

Here, Defendants, owned and managed by Namco, have engaged in business in and has been the Operator of the Shopping Center in Albany, Oregon. The suit is related to the operation of that Oregon shopping center. That is sufficient to establish specific jurisdiction over Defendants for this breach of contract claim related to the operation of the Shopping Center in Oregon.

---

[1] The Oregon Supreme Court has made clear that registering to do business in the state of Oregon does not amount to consent to be subject to general jurisdiction in Oregon. *Figueroa v. BNSF Ry. Co.*, 361 Or. 142, 162 (2017).

**III. *Eitel* Factors**

The first three *Eitel* factors weigh in favor of granting the motion for default judgment in Plaintiff's favor. Regarding the first factor, Plaintiff would be prejudiced if default judgment were not given as there would be no alternative means of resolving this conflict. *See, e.g., Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010) ("[W]here a defendant's failure to appear makes a decision on the merits impracticable, if not impossible, entry of default judgment is warranted.") (internal quotations omitted). As to the second and third factors, Plaintiff's complaint sufficiently states a claim upon which relief can be granted and provides factual allegations sufficient to establish the elements of those claims. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) (analyzing the sufficiency of a complaint and the allegations supporting the judgment).

For the fourth factor, the sum of money at stake, the court considers the amount sought "in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). A large amount of money in dispute generally weighs against granting default judgment. *See Eitel*, 782 F.2d at 1472 (evaluating a multi-million-dollar damage award). Here, Plaintiff seeks $158,423.80 including $155,878.80 in damages, the $405 filing fee, and $2,140 in fees for process of service. Because Plaintiff's requested relief is not excessive in relation to Defendant's breach of contract and unjust enrichment, this factor also weighs in favor of default judgment.

The fifth and sixth *Eitel* factors consider potential factual disputes and whether a defendant's nonappearance arises from excusable neglect. In this case, these factors also weigh in favor of default judgment. There are no factual disputes before the Court because upon entry of default against Defendants, all factual allegations in Plaintiff's well-pleaded complaint are

taken to be true. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). Additionally, there is no indication that Defendant's failure to appear arises from excusable neglect. Plaintiff's complaint was served on Defendant via their registered agents and Defendants have not responded. Aff. Serv., ECF Nos. 11, 12, 13.

The seventh *Eitel* factor consistently weighs against default judgment as it considers the public policy favoring a decision on the merits. However, that factor standing alone is not dispositive, particularly in cases where a defendant fails to appear. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 ("[T]he mere existence of [Rule 55(b)] indicates that this preference, standing alone… 'does not preclude a court from granting default judgment.'") (quoting *Kloepping v. Fireman's Fund*, No. 94-cv-2684, 1996 WL 75314 at 3* (N.D. Cal. Feb. 13, 1996). Taken as a whole, the *Eitel* factors strongly favor granting Plaintiff's motion for default judgment.

## IV. Calculation of Damages

When entering default judgment, the court must accept the plaintiff's facts in the complaint as true, but the plaintiff must still prove damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)); *see also Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011) (holding that the plaintiff is required to provide evidence of its damages not different in kind or amount from those set forth in the complaint). The precise amount of damage the plaintiff must prove may be established by declarations and affidavits without an evidentiary hearing. *Solano v. Preciado*, 738 F.Supp. 3d 1356, 1362 (D. Or. 2024) (holding that even when damages are not certain, the plaintiff's declaration provides a sufficient evidentiary basis to assess damages).

Plaintiff supports its motion with a declaration from a licensed attorney accompanied by detailed spreadsheets containing overpayments of Common Area Maintenance Costs and audit costs required under the Agreement. These materials satisfy the information necessary for the Court to determine damages.

Plaintiff seeks $155,878.80 in damages arising from Defendants' failure to reimburse Plaintiff for overpayments of Common Area Maintenance Costs from 2019 through 2023 plus interest as required under Section XXX-K of the Agreement and audit costs as required under Section X-H of the Agreement. Including the filing fee and fees for process of service, Plaintiff requests a total of $158,423.80. This amount is sufficiently supported by Plaintiff's attached declaration.

## RECOMMENDATION

For the reasons stated above, the Court recommends that Plaintiff's motion for default judgment be GRANTED and Plaintiff be awarded $158,423.80 in damages.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to de novo consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

DATED this 21st day of October, 2026.

/s/Amy E. Potter
AMY E. POTTER
United States Magistrate Judge